UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE 650 FIFTH AVENUE AND RELATED PROPERTIES | Case No. 08 Civ. 10934(KBF) and All Member and Related Cases |

**MEMORANDUM OF LAW IN SUPPORT OF JUDGMENT CREDITOR
PLAINTIFFS' JOINT MOTION FOR SUMMARY JUDGMENT**

STROOCK & STROOCK & LAVAN LLP
Curtis C. Mechling
James L. Bernard
Benjamin Weathers-Lowin
Monica Hanna
Patrick N. Petrocelli
Nathan H. Stopper
New York, New York 10038
Tel: (212) 806-5400
*Attorneys for the Greenbaum, Acosta, Beer
and Kirschenbaum Plaintiffs*

*Additional counsel on signature page*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY JUDGMENT STANDARD ..........................................................................2

ARGUMENT ....................................................................................................................2

POINT I  SUMMARY JUDGMENT IS WARRANTED
AS TO PLAINTIFFS' TURNOVER CLAIMS.............................................2

    A.  Defendants Acted on Behalf of Iran ...............................................2

        1.  There Is No Dispute that Assa Acted on Behalf of
Iran ......................................................................................2

        2.  There Is No Dispute that Alavi Acted on Behalf of
Iran ......................................................................................3

        3.  There Is No Dispute that 650 Fifth Ave. Acted on
Behalf of Iran ......................................................................4

    B.  Defendants' Activity on Behalf of Iran Subject
the Properties at Issue to Turnover as a Matter of Law ...................5

        1.  The Properties Are Blocked Assets of a Terrorist
Party under TRIA................................................................6

        2.  Plaintiffs Are Entitled to Turnover of the Properties
Pursuant to the FSIA ..........................................................8

            a.  Plaintiffs Are Entitled to Turnover Pursuant
to FSIA § 1610(g) ..................................................8

            b.  Plaintiffs Are Entitled to Turnover Pursuant
to FSIA § 1610(a) ..................................................9

            c.  Plaintiffs Are Entitled to Turnover Pursuant
to FSIA § 1610(b) ................................................12

POINT II  THE COURT'S FORFEITURE ORDER
COLLATERALLY ESTOPS DEFENDANTS .........................................14

CONCLUSION................................................................................................................17

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allen v. McCurry,*
    449 U.S. 90 (1980)..............................................................................................17

*Bronzini v. Classic Sec., LLC,*
    No. 11 Civ. 2096 (KBF), 2012 WL 1681745 (S.D.N.Y. May 2, 2012) ..................15

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,*
    56 F.3d 359 (2d Cir. 1995)...................................................................................14

*Chariot Plastics, Inc. v. United States,*
    28 F. Supp. 2d 874 (S.D.N.Y. 1998)....................................................................16

*Ford Motor Co. v. Russian Fed'n,*
    09 CIV. 1646 (JGK), 2010 WL 2010867 (S.D.N.Y. May 18, 2010).......................11

*In re 650 Fifth Ave. & Related Properties,*
    881 F. Supp. 2d 533 (S.D.N.Y. 2012).......................................................... passim

*In re 650 Fifth Ave.,*
    08 CIV. 10934 KBF, 2013 WL 2451067 (S.D.N.Y. June 6, 2013).....................7, 13

*In re Brown,*
    951 F.2d 564 (3d Cir. 1991)..................................................................................16

*Joseph v. Office of Consulate Gen. of Nigeria,*
    830 F.2d 1018 (9th Cir. 1987) ..............................................................................10

*Kaggen v. IRS,*
    71 F.3d 1018 (2d Cir. 1995)....................................................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)................................................................................................2

*Metromedia Co. v. Fugazy,*
    983 F.2d 350 (2d Cir. 1992), *abrogated on other grounds as noted in Yung v. Lee,*
    432 F.3d 142 (2d Cir. 2005)............................................................................15, 16

*Oyeniran v. Holder,*
    672 F. 3d 800 (9th Cir. 2012) ...............................................................................15

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979)..............................................................................................14

*Pignons S.A. de Mecanique v. Polaroid Corp.*,
    701 F.2d 1 (1st Cir. 1983) .................................................................................................15

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ..............................................................................................10, 12

*United States v. Hudson*,
    No. 06-CV-763 (FJS), 2007 U.S. Dist. LEXIS 62749 (N.D.N.Y. Aug. 24, 2007)..................16

*Zdanok v. Glidden Co., Durkee Famous Foods Division*,
    327 F.2d 944 (2d Cir. 1964)..............................................................................................16

## STATUTES

FED. R. CIV. P. 56(a) ...............................................................................................................2

FED. R. EVID. 201 .....................................................................................................................7

28 U.S.C. § 1291 ....................................................................................................................15

28 U.S.C. § 1603(d) ...............................................................................................................10

28 U.S.C. § 1605A ........................................................................................................... passim

28 U.S.C. § 1610(a)(7)...........................................................................................................9, 10

28 U.S.C. § 1610(b)(3) ...................................................................................................12, 13, 14

28 U.S.C. §1610(g)..........................................................................................................8, 9, 17

28 U.S.C. § 1610(g)(1)...........................................................................................................8, 9

Terrorism Risk Insurance Action § 201(a), Pub.L. No. 107-297, Title II, 116 Stat. 2337
    (2002)................................................................................................................... passim

## OTHER AUTHORITIES

31 C.F.R. § 560.304 ...................................................................................................................5

Exec. Order No. 13,599, 77 Fed. Reg. 26 (Feb. 6, 2012) .................................................. passim

H.R. REP. NO. 94-1487 (1976) ...............................................................................................10

The judgment creditor plaintiffs herein previously designated as the Greenbaum, Acosta, Beer, Kirschenbaum, Heiser, Havlish, Peterson and Rubin Plaintiffs (collectively, "Plaintiffs")[1] respectfully submit this memorandum of law in support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure with respect to their turnover claims against defendants Assa Corp. and Assa Co. Ltd. (together, "Assa"), the Alavi Foundation ("Alavi"), and 650 Fifth Avenue Company ("650 Fifth Ave." and, collectively with Assa and Alavi, the "Defendants").

## PRELIMINARY STATEMENT

As stated on the record on September 11, 2013, and by written orders dated September 12, 2013 and September 16, 2013, this Court granted summary judgment to the Government and ruled that a portion of the properties at issue in this consolidated proceeding are subject to forfeiture.  In doing so, the Court found that: (1) Defendants acted on behalf of the Government of Iran ("Iran") in violation of the regulations of the Office of Foreign Assets Controls ("OFAC"), 31 C.F.R. part 560 ("31 C.F.R. 560"), and the International Emergency Economic Powers Act ("IEEPA"); and (2) Alavi knew that Assa was a front company for Bank Melli Iran ("Bank Melli") and Iran.  Order, dated September 12, 2013, ECF No. 851; Opinion and Order, dated September 16, 2013, ECF No. 865 ( "Forfeiture Order").[2]  Based upon these findings, there is also no disputed issue of fact that Defendants, under applicable provisions of the Foreign

---

[1]   A schedule of Plaintiffs and their respective claims is annexed to the accompanying Declaration of James L. Bernard in Support of Judgment Creditor Plaintiffs' Joint Motion for Summary Judgment, dated September 17, 2013, ("Bernard Decl.") as Exhibit 1.

[2]   The Court severed the Government's forfeiture claims as to seven properties.  *See* Forfeiture Order at 8, 82.  As explained further below, this does *not* impact some of Plaintiffs' causes of action, and the Court may grant summary judgment to Plaintiffs as to *all* of the properties at issue in these proceedings, except with respect to two FSIA causes of action.  *See infra* note 11.

Sovereign Immunities Act ("FSIA"), are the Government of Iran.[3]  Plaintiffs are therefore entitled to turnover pursuant to the Terrorism Risk Insurance Act of 2002 ("TRIA") and the FSIA.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," and set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 587 (1986).

## ARGUMENT

## POINT I

## SUMMARY JUDGMENT IS WARRANTED AS TO PLAINTIFFS' TURNOVER CLAIMS

**A.**     **Defendants Acted on Behalf of Iran**

  **1.**     **There Is No Dispute that Assa Acted on Behalf of Iran**

This Court found that there is no issue of material fact as to whether Assa performed significant and valuable services to, and acts on behalf of, Bank Melli and Iran, including (1) acting as a front for Bank Melli to shield its assets from judgment creditors and law enforcement; (2) managing Bank Melli's concealed interest in 650 Fifth Ave.; and (3) funneling millions of dollars to Bank Melli. *See* Forfeiture Order at 4, 49, 50.

---

[3]     Plaintiffs adopt the Government's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment by the Government, dated August 17, 2013, ECF No. 688 (the "SUF").  The only additional materials necessary to resolve Plaintiffs' joint motion are the judgments and judicial opinions underlying those judgments, copies of which are annexed to the accompanying Bernard Decl. as Exhibits 2-23.

Specifically, the record demonstrates that Assa served Bank Melli and Iran by actively concealing Bank Melli's interest in 650 Fifth Ave. from regulators and judgment creditors by replacing Bank Melli-affiliated Assa directors with others "whose affiliation with the Bank could not be easily proven," and by transferring direct management of Assa's interests from Bank Melli employees to indirect management through Mohammad Hassan Dehghani Tafti.  *See* Forfeiture Order at 26, 76; *see also* SUF ¶¶45-47; 53-54.  As the Court has found, undisputed evidence demonstrates that "Assa has managed Bank Melli and therefore Iran's minority interest in the assets at issue, and it has enabled Bank Melli to receive substantial revenues generated through the assets.  Forfeiture Order at 50; *see also* SUF ¶¶ 53-54.

In sum, the Forfeiture Order has determined that Assa engaged in extensive conduct on behalf of Bank Melli and Iran. *See* Forfeiture Order at 20-21; 27-28; 50-51; 60-63.

### 2.      There Is No Dispute that Alavi Acted on Behalf of Iran

Likewise, this Court found no issue of material fact as to whether Alavi performed significant and valuable services on behalf of Bank Melli and Iran, including (1) acting as managing partner of 650 Fifth Ave., so as to oversee all of the finances and business of the property and partnership with Assa; (2) routinely engaging in such business with and on behalf of Assa, despite knowing that Assa was a front for Bank Melli and Iran; (3) carrying out the express orders of Iranian officials and representatives of the Supreme Leader of Iran with respect to Alavi and 650 Fifth Ave.'s funds; and (4) concealing Iran's interest in and control over Alavi in civil lawsuits filed by judgment creditors against the Government of Iran in the mid-1990s, as well as by attempting to destroy documents whose production called for by a grand jury subpoena served upon Alavi on or about December 18, 2008.  *See* Forfeiture Order at 6-7, 31, 33 40-41, 49, 51-58, 71.

In particular, the record demonstrates that Alavi administered the day-to-day business of 650 Fifth Ave., and exercised critical decision-making authority, per the terms of a Partnership Agreement with Assa, on Assa's behalf. Forfeiture Order at 16-20, 32; *see also* SUF ¶¶ 85-87. Alavi did so with knowledge of Assa's true identity as a mere front for Bank Melli, an agent and instrumentality of Iran. *See* Forfeiture Order at 6-7, 31, 40-41, 52-58, 71; *see also* SUF ¶¶ 48-50. The undisputed facts further confirm that Alavi assented to, received and executed instructions from Iranian officials, including Mohsen Rafigdoost, the head of the *Bonyad Mostazafan va Janbazan* ("Bonyad Mostazafan"), which is ultimately supervised by and responsible to the Supreme Leader of Iran, as well as Ambassadors to the Iranian Mission to the United Nations. *See* Forfeiture Order at 21-22, 27; *see also* SUF ¶¶ 6-7; 58-71.

Based on these and other facts, this Court found that Alavi acted on behalf of Assa, Bank Melli, and Iran. *See* Forfeiture Order at 6-7, 31, 40-41, 51-58, 71.

**3.      There Is No Dispute that 650 Fifth Ave. Acted on Behalf of Iran**

The evidence overwhelmingly demonstrates that 650 Fifth Ave. made distributions to both Alavi and Assa, constituting transfers prohibited by IEEPA. Forfeiture Order at 80; *see also* SUF ¶¶ 55-57. Indeed, as the Forfeiture Order delineates in scrupulous evidentiary detail, 650 Fifth Ave. is nothing more than "Alavi and Assa together" (Forfeiture Order at 7 n. 13) and was created for the very purpose of masking Bank Melli and Iran's interest in the building located at 650 Fifth Avenue (the "Building") and channeling rental income from the Building back to Bank Melli and Iran. Based on these and other facts, this Court found that 650 Fifth Ave. acted on behalf of Iran. *See id.* at 16-20, 48-65.

B.    **Defendants' Activity on Behalf of Iran Subject**
      **the Properties at Issue to Turnover as a Matter of Law**

As summarized above, the Court concluded in the Forfeiture Order that Defendants

engaged in conduct on behalf of Bank Melli and Iran. *See* Forfeiture Order at 4-5, 40-41, 58, 80.

As a result, Defendants meet the regulatory definition of Iran in 31 C.F.R. 560 and Executive

Order 13599 ("E.O. 13599"). These facts lead inescapably to the conclusion that, under the

FSIA and TRIA, Plaintiffs are entitled to turnover of Defendants' United States properties.

First, 31 C.F.R. 560 defines Iran broadly to include:

> a) the state and Government of Iran, as well as any political subdivision, agency
> or instrumentality thereof; (b) Any person owned or controlled directly or
> indirectly by the foregoing; (c) Any person to the extent that such person is, or has
> been, since the applicable effective date, *acting or purporting to act directly or
> indirectly on behalf of any of the foregoing.*

31 C.F.R. § 560.304 (emphasis added). Because Defendants cannot raise any triable issue of fact

as to whether they are, or have been, acting directly or indirectly on behalf of Iran, they fall

within the regulatory definition of Iran. *See* Forfeiture Order at 4-5, 40-41, 58, 80. In fact, this

Court found that the undisputed facts demonstrate that Defendants have in fact acted on behalf of

Iran, concluding, *inter alia*, that, "Assa was (and is) a front for Bank Melli, and thus a front for

the Government of Iran," and that Alavi provided services to Iran by, among other things,

shielding and concealing Iranian assets. Forfeiture Order at 5.

Second, E.O. 13599 provides a similar definition of the Government of Iran: "any

political subdivision, agency, or instrumentality thereof, . . . and any [individual or entity] owned

or controlled by, or *acting for or on behalf of*, the Government of Iran." Exec. Order No. 13,599,

77 Fed. Reg. 26 (Feb. 6, 2012) (emphasis added). Again, the Court's findings in the Forfeiture

Order make clear that Defendants acted "for or on behalf of" Iran.

In sum, this Court need only apply its finding in the Forfeiture Order that Defendants acted on behalf of Iran to establish that Defendants are "Iran" under 31 C.F.R. 560 and E.O. 13599.  *See* Forfeiture Order at 4-5, 40-41, 58, 80.  And this Court has already held that the terms of 31 C.F.R. 560 and E.O. 13599 can be used to define a foreign state under the FSIA and TRIA. *See In re 650 Fifth Ave. & Related Properties*, 881 F. Supp. 2d 533, 550 n.15 (S.D.N.Y. 2012). Having established that Defendants meet the definition of "Iran," Plaintiffs are entitled to turnover of Defendants' property upon a showing that Plaintiffs satisfy the remaining requirements of TRIA and the FSIA.  *See* Forfeiture Order at 4-5, 40-41, 58, 80.  Plaintiffs can easily make that showing here.[4]

### 1.    The Properties Are Blocked Assets of a Terrorist Party under TRIA

The property of a terrorist party is subject to execution upon a judgment pursuant to TRIA section 201(a) if: (1) the judgment is one for which the terrorist party is not immune under FSIA sections 1605A or 1605(a)(7); and (2) the property is a blocked asset of the terrorist party or any of its agencies or instrumentalities.  TRIA § 201(a), Pub.L. No. 107-297, Title II, 116 Stat. 2337 (2002).[5]  Both of these elements are met as to each Defendant.

---

[4]    Executive Order 13599 and 31 C.F.R. 560 do not contain knowledge or scienter requirements.  The Court addressed a related issue in the context of IEEPA, and concluded that "if the essential claim is that Assa and/or Alavi are controlled by Iran and therefore their acts are services to Iran, that claim would involve an element of knowledge."  Forfeiture Order at 39.  We address Plaintiffs' turnover claims under the assumption that "knowledge" may be required because the Court's Forfeiture Order found no triable issue of fact as to Defendants' knowledge.  Plaintiffs reserve the right, however, to argue if need be in any subsequent proceedings that knowledge is not required under these provisions.

[5]    Section 201 of TRIA states in relevant part:

Notwithstanding any other provision of law ... in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section [1605A or] 1605(a)(7) of title 28 United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy any judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a).

*First*, this Court may take judicial notice of Plaintiffs' respective judgments under FSIA section 1605A and/or former section 1605(a)(7) (as in effect until January 28, 2008) against, among other defendants, Iran based upon acts of terrorism sponsored by Iran.[6] FED. R. EVID. 201; *Kaggen v. IRS*, 71 F.3d 1018, 1020 (2d Cir. 1995). Copies of Plaintiffs' judgments, and the opinions underlying those judgments, are annexed to the Bernard Decl. as Exhibits 2 through 24.

*Second*, section 201 of TRIA applies to "blocked assets", which are defined as "any asset seized or frozen by the United States under...[IEEPA]." *See* TRIA § 201(d)(2)(A). Here, Assa's assets are blocked by operation of an OFAC determination, and Alavi and 650 Fifth Ave.'s assets are blocked by E.O. 13599 and this Court's findings in the Forfeiture Order.[7]

This Court already granted Plaintiffs' summary judgment as to Assa, ruling that "the Assa Defendants' assets constitute 'blocked assets' of Bank Melli, an instrumentality of Iran," because they are on OFAC's list of "Specially Designated Nationals and Blocked Persons," ("SDN List") and are subject to execution and turnover on that basis. *In re 650 Fifth Ave.*, 08 CIV. 10934 KBF, 2013 WL 2451067, at *2,*7 (S.D.N.Y. June 6, 2013). As discussed above, this Court's finding that Alavi and 650 Fifth Ave. acted on behalf of Iran is sufficient to deem Alavi and 650 Fifth Ave. to be the Government of Iran under E.O. 13599. And as a result, Alavi and 650 Fifth Ave.'s assets are likewise blocked by E.O. 13599, which provides that "[a]ll property and interest in property of the Government of Iran . . . that are in the United States . . . are blocked . . . ." Exec.Order No. 13,599, section 1(a); *see also* Forfeiture Order at 4-5, 40-41, 58, 80.

---

[6]  Exhibit 1 to the accompanying Bernard Decl. delineates the specific judgments held by each of the Plaintiff groups.

[7]  As this Court held in denying Defendants' motion to dismiss, the fact that TRIA refers to assets "seized or frozen" and that E.O. 13599 refers to "blocked" assets is of no moment. *In re 650 Fifth Ave.*, 881 F. Supp. 2d at 547.

Under TRIA, those blocked assets are therefore "subject to execution or attachment in aid of execution in order to satisfy [Plaintiffs'] judgment[s] to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a).

## 2.    Plaintiffs Are Entitled to Turnover of the Properties Pursuant to the FSIA

As discussed above, the record establishes that Defendants are the Government of Iran under 31 C.F.R. 560 and Executive Order 13599.  As this Court previously held, it is appropriate to use those regulatory definitions in defining the phrase "foreign state" under the FSIA, and here, based upon the Forfeiture Order, the properties at issue are subject to turnover under the FSIA.  *See In re 650 Fifth Ave.*, 881 F. Supp. 2d at 550 n.15.

### a.    Plaintiffs Are Entitled to Turnover Pursuant to FSIA § 1610(g)

Property is subject to execution upon a judgment pursuant to section 1610(g)(1) of the FSIA if: (1) it is the property of a foreign state or agency or instrumentality of a foreign state; and (2) the judgment against the foreign state was entered under § 1605A.  28 U.S.C. § 1610(g)(1).[8]  These elements are met as to each of the Defendants.[9]

---

[8]    Section 1610(g) states in relevant part:

(g) Property in Certain Actions.—

(1) In general.— . . . [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—

(A) the level of economic control over the property by the government of the foreign state;

(B) whether the profits of the property go to that government;

(C) the degree to which officials of that government manage the property or otherwise control its daily affairs;

(D) whether that government is the sole beneficiary in interest of the property; or

(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

(Continued on next page)

First, as discussed above, this Court's determination that Defendants acted on behalf of Iran is simultaneously a determination that Defendants are Iran as a matter of law under 31 C.F.R. 560 and E.O. 13599.  *See* Forfeiture Order at 4-5, 40-41, 58, 80.  Therefore, any property held by Defendants "is the property of a foreign state . . .," as required by section 1610(g), and not immune from execution and turnover.  28 U.S.C. § 1610(g)(1); *see also In re 650 Fifth Ave.*, 881 F. Supp. 2d at 550 n.15.  Second, this Court may take judicial notice from the accompanying judgments that the Plaintiffs identified in Exhibit 1 hold judgments pursuant to 28 U.S.C. § 1605A.  *See* Bernard Decl. Exs. 2-24.

### b.     Plaintiffs Are Entitled to Turnover Pursuant to FSIA § 1610(a)

Property in the United States is subject to attachment and execution upon a judgment pursuant to FSIA section 1610(a)(7) if: (1) it is the property of a foreign state; (2) it is used for a commercial activity; and (3) the judgment relates to a claim for which the foreign state is not immune under FSIA sections 1605A or 1605(a)(7) (as such section was in effect on January 27, 2008).  28 U.S.C. § 1610(a)(7).[10]  Based on the undisputed facts before this Court, all three elements are met.

---

28 U.S.C. §1610(g).

[9]   As indicated on Exhibit 1 to the Bernard Decl., the Greenbaum, Peterson, and Rubin Plaintiffs do not possess section 1605A judgments and therefore do not seek summary judgment under section 1610(g) of the FSIA.

[10]  Section 1610(a)(7) states in relevant part:

    (a)  The property in the United States of a foreign state, as defined in section 1603 (a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

        (7)  the judgment relates to a claim for which the foreign state is not immune under section 1605A or section 1605 (a)(7) (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved with the act upon which the claim is based.

28 U.S.C. §1610(a)(7).

The only element of section 1610(a)(7) not yet discussed is the second, which requires that the property at issue be used for a commercial activity.  Defendants undeniably use the Building, Alavi and Assa Corp.'s partnership shares in 650 Fifth Ave., 650 Fifth Ave.'s bank accounts, and Assa Corp.'s bank accounts for commercial activities.[11]  *See* SUF ¶¶ 18, 27, 55, 85-90.

The FSIA definition of "commercial activity" states in relevant part that "the commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C.A. § 1603(d).  In construing this definition, the Supreme Court has held, "when a foreign government acts not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA."  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).  Accordingly, the relevant question is not whether the foreign government seeks to profit or to fulfill uniquely sovereign objectives, but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"  *Id.*

Both the legislative history of the FSIA and relevant precedent confirm that the leasing of property falls within the definition of commercial activity.  H.R. REP. NO. 94-1487, at 16 (1976) (stating that a foreign government's leasing of property would be included in the definition of commercial activity); *see, e.g., Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1024 (9th Cir. 1987) (finding the leasing of real property by the consulate of a foreign sovereign

---

[11]   Plaintiffs' joint motion for summary judgment with respect to their causes of action under section 1610(a) is limited to these properties.  For much of the same reasons that the Court severed the remaining properties from the Court's decision on the Forfeiture Order, this motion does not address the commercial activity requirement for the remaining properties.  Plaintiffs will work with the Government to present these issues to the Court in supplemental briefing.

to constitute commercial activity); *Ford Motor Co. v. Russian Fed'n*, 09 CIV. 1646 (JGK), 2010 WL 2010867, at *3-4 (S.D.N.Y. May 18, 2010) (holding the leasing of vehicles by a foreign sovereign to be commercial activity).

Thus, regardless of any of Alavi's professed philanthropic activities, the leasing of the Building is an action of a private player within a marketplace, and the Defendants therefore use the Building for a "commercial activity" within the meaning of the FSIA. *See* SUF ¶¶ 18, 27, 55, 85-90. Among the multitude of facts demonstrating commercial activity are the following: (1) pursuant to the 1989 Partnership Agreement between Alavi and Assa Corp., Alavi has the authority to lease space in the Building to tenants; (2) 650 Fifth Ave.'s tax filings show that, on average, the Building generated approximately $17 million per year in revenue between 2002 and 2004, and approximately $19 to $21 million per year between 2006 and 2009; and (3) Alavi received approximately $5 million dollars in annual revenue, of which 90 percent was directly derived from the rent rolls of the Building. *See* SUF ¶¶ 55, 87, 90.

Alavi and Assa Corp.'s partnership shares in 650 Fifth Ave. were used for commercial activity as well, as they were the mechanism through which the partners owned the Building and determined the distribution of the revenue it produced. *See* SUF ¶ 33, 56. Furthermore, Alavi and Assa Corp. used partnership shares as a means to satisfy Alavi's debts and secure a loan for the Partnership. First, in 1989, in return for a $44.8 million contribution to the Partnership, Alavi gave Assa Corp. a 35% share in 650 Fifth Ave Co. *See* Forfeiture Order at 19; *see also* SUF ¶ 33. Second, in 1994, Alavi transferred a 5% interest in 650 Fifth Ave. to Assa Corp. to satisfy a $2.2 million debt it owed to Assa Corp, and to secure a $1.7 million loan from Bank Melli. *See* SUF ¶¶ 41-44.

The bank accounts of 650 Fifth Ave. and Assa Corp. – holding companies that perform purely commercial activities – were also used for commercial activity. *See* Forfeiture Order at 5, 17. 650 Fifth Ave. is engaged entirely in the ownership and distribution of proceeds from the Building, and it made regular distributions of revenue from its bank accounts to Alavi and Assa Corp. *See* Forfeiture Order at 19; *see also* SUF ¶¶ 20, 22, 56. Assa Corp., a company created to hold, disguise and administer Bank Melli's share in the Building, "obtained its bank accounts . . . solely as a result of its ownership interest in and the revenue generated by the Building." Forfeiture Order at 61. Assa Corp. used these bank accounts to receive distributions from 650 Fifth Ave. and to transfer millions of dollars to its principal, Bank Melli, through Assa Co. Ltd. *See* Forfeiture Order at 24, 75-76; *see also* SUF ¶¶ 45, 51, 53-54, 57. Such regular payment, receipt and transfer of funds to and from bank accounts are certainly "the *type* of action through which a private party engages in trade and traffic or commerce," and thus constitute commercial activity. *Republic of Argentina*, 504 U.S. at 614; *see also* SUF ¶ 56.

The use of these properties in commercial activity, taken together with the adjudicated facts that Defendants are Iran and that all Plaintiffs hold unsatisfied judgments against Iran under sections 1605A and/or 1605(a)(7) of the FSIA, compel the conclusion that Plaintiffs are entitled to execute on the properties under FSIA section 1610(a).

### c.    Plaintiffs Are Entitled to Turnover Pursuant to FSIA § 1610(b)

Property in the United States is subject to execution upon a judgment pursuant to FSIA § 1610(b)(3) if: (1) it is the property of an agency or instrumentality of a foreign state; (2) the agency or instrumentality is engaged in commercial activity in the United States; and (3) the judgment relates to a claim for which the agency or instrumentality is not immune under

FSIA§§ 1605A or, its precursor 1605(a)(7).  28 U.S.C. § 1610(b)(3).[12]  The record demonstrates that all three of these elements are met as to Assa.[13]

Unique to Plaintiffs' claims under § 1610(b), this Court already ruled that Assa is an agency or instrumentality of Iran based on OFAC's determination.  *In re 650 Fifth Ave.*, 2013 WL 2451067 at *4 ("The OFAC materials demonstrate that the Assa Defendants are instrumentalities of a terrorist party, Iran, that their interests in the 650 Properties are 'blocked assets,' and that those assets are 'of' the instrumentality of Iran.  Defendants have failed to raise a triable issue as to any of these matters.").

In addition, it is undisputed that Assa Corp. is engaged in commercial activity in the United States, most clearly by way of its participation in the Partnership.[14]  *See* Forfeiture Order at 50-51, 61; *see also* SUF ¶¶ 28-37.  Moreover, Assa Corp. accepted millions of dollars in distributions from revenues generated by the Building and transferred millions of dollars abroad to Assa Co. Ltd, and its one employee, Mohammad Hassan Dehghani Tafti, regularly engaged in commercial activity on its behalf in the United States.  *See* Forfeiture Order at 19, 24, 70-71; *see*

---

[12]  Section 1610(b) states in relevant part:

> (b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—
>
> > (3) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605A of this chapter or section 1605 (a)(7) of this chapter (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved in the act upon which the claim is based.

28 U.S.C. § 1610(b)(3).

[13]  Plaintiffs' claims under FSIA § 1610(b) as to Alavi and 650 Fifth Ave. are not the subject of this motion, but are hereby reserved.

[14]  Unlike section 1610(a), section 1610(b) does not require that the property of an agency or instrumentality of a foreign state be used for a commercial activity, only that the agency or instrumentality be itself engaged in commercial activity.  Thus, *all* property of Assa Corp., including its bank accounts, partnership shares in 650 Fifth Ave., and concurrent interest in the Building are subject to execution pursuant to section 1610(b).

*also* SUF ¶¶ 53-57.  The remaining elements of Plaintiffs' claims pursuant to § 1610(b)(3)

overlap with those in satisfaction of their §§ 1610(g) and (a)(7) claims, as discussed above.

In sum, Plaintiffs are entitled to summary judgment pursuant to their TRIA and FSIA

claims as set forth above.

## POINT II

## THE COURT'S FORFEITURE ORDER
## COLLATERALLY ESTOPS DEFENDANTS

This Court's grant of the Government's motion for summary judgment precludes Assa

from re-litigating the issue of whether they are instrumentalities of Iran and likewise precludes

Alavi and 650 Fifth Ave. from re-litigating the issue of whether they acted for or on behalf of

Iran.  Under the doctrine of nonmutual offensive collateral estoppel, a litigant who was not a

party to a prior judgment may use that judgment offensively to prevent a defendant from

relitigating issues resolved in the earlier proceeding.  *Parklane Hosiery Co. v. Shore*, 439 U.S.

322, 331 (1979).  For collateral estoppel to apply, four elements must be met: "(1) the issues of

both proceedings must be identical, (2) the relevant issues were actually litigated and decided in

the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the

issues in the prior proceeding, and (4) the issues were necessary to support a valid and final

judgment on the merits."  *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56

F.3d 359, 368 (2d Cir. 1995).  Here, all these elements are clearly satisfied.

*First*, the issues already decided by the Court on the Government's motion for summary

judgment and the issues currently pending before the Court are identical.  In particular, the Court

has already determined that "there is substantial, uncontradicted evidence that Assa is owned and

controlled by Bank Melli, and that Bank Melli is wholly owned and controlled by Iran," that

"Alavi knew that it was interacting with Bank Melli through Assa, and therefore Iran through

14

Assa," and that Alavi "has been acting as a service provider" to Iran. Forfeiture Order at 48, 50, 71. As set forth above, those same issues are dispositive of Plaintiffs' claims against Defendants.

*Second*, there can be no serious dispute that: (1) the issues were actually litigated and decided in the Government's civil forfeiture action; and (2) Defendants had a full and fair opportunity to litigate those issues. The Court is well aware of the extensive discovery during the pendency of these consolidated proceedings, and, of course, the issues were decided by the Court after full briefing on the Government's motion for summary judgment. *See Bronzini v. Classic Sec., LLC*, No. 11 Civ. 2096 (KBF), 2012 WL 1681745, at *3 (S.D.N.Y. May 2, 2012) (Forrest, J.) (holding that collateral estoppel barred plaintiff from re-litigating issues already decided in prior proceeding where "the parties conducted discovery and plaintiff's claims were dismissed after summary judgment briefing").[15]

*Third* and finally, as is clear from the Court's opinion, the issues already adjudicated are sufficient to support a valid and final judgment on the merits. Indeed, in granting the Government summary judgment, the Court specifically relied on its findings that "Iran, through Bank Melli, owns and controls Assa," that "there is no triable issue of fact as to whether Alavi knew that Assa was a front company for Bank Melli and therefore for Iran," and that Alavi "has been acting as a service provider" to Iran. Forfeiture Order at 48, 50, 58. For purposes of determining the applicability of collateral estoppel, "the concept of finality . . . includes many dispositions which, though not final [under 28 U.S.C. § 1291], have nevertheless been fully

---

[15]   Even if Defendants take the position that they wish to supplement the 56.1 record submitted on the Government's motion for summary judgment, Defendants cannot defeat collateral estoppel by submitting additional evidence on which they did not previously rely. *See Oyeniran v. Holder*, 672 F. 3d 800, 807 (9th Cir. 2012) ("The introduction of new evidence on a matter previously resolved is not an exception to collateral estoppel."); *see also Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2-3 (1st Cir. 1983) (Breyer, J.) ("[The plaintiff] had a fair opportunity to make these arguments and to introduce this evidence the first time. The law requires the courts to offer [the plaintiff] nothing more, for collateral estoppel implements 'the principle that one opportunity to litigate an issue fully and fairly is enough.'").

litigated." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992) (internal quotation

marks omitted), *abrogated on other grounds as noted in Yung v. Lee*, 432 F.3d 142, 147 (2d Cir.

2005); *see also Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 955 (2d

Cir. 1964) (Friendly, J.) (noting that "finality" in the context of collateral estoppel "may mean

little more than that the litigation of a particular issue has reached such a stage that a court sees

no really good reason for permitting it to be litigated again") (internal quotation marks omitted).

In determining whether an issue has been "fully litigated," courts consider "such factors as the

nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy of the hearing, and

the opportunity for review." *Metromedia Co.*, 983 F.2d at 366 (internal quotation marks

omitted).

These factors counsel in favor of giving the Court's Forfeiture Order preclusive effect

here.  The Court's decision is not "avowedly tentative."  Quite the opposite.  It fully and

completely resolves the vast majority of the Government's claims against Defendants, and the

few open issues are unrelated to the issues for which Plaintiffs seek collateral estoppel. *See In re

Brown*, 951 F.2d 564, 569-70 (3d Cir. 1991) (giving decision granting summary judgment

preclusive effect even though it was "not final for purposes of appeal" because it was

"sufficiently final . . . as to the matters considered and decided in that phase of the controversy").

Further, as shown above, Defendants had a more than adequate opportunity to litigate these

issues.[16]

---

[16]  Although Defendants have not yet had an opportunity to seek appellate review of the Court's summary
judgment ruling, that factor alone is not a reason to deny the issues decided in that ruling preclusive effect. *See
Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (holding that issue preclusion
applies to a final judgment "even while an appeal from that judgment is pending"); *see also United States v.
Hudson*, No. 06-CV-763 (FJS), 2007 U.S. Dist. LEXIS 62749, at *17 (N.D.N.Y. Aug. 24, 2007) (applying issue
preclusion to an interlocutory ruling even though there had "not yet [been] an opportunity to seek review of . . .
[the] decision" because "[t]wo of the three *Metromedia* factors support[ed] a finding of finality" and "the
(Continued on next page)

The ultimate aims of collateral estoppel are to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Where, as here, the Court has already made a determination in these consolidated proceedings that is dispositive of Plaintiffs' TRIA and FSIA claims against Defendants, those three aims are well served by giving that determination preclusive effect.  Accordingly, the Court should preclude Defendants from re-litigating issues they have already contested and lost on a full and fair record.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Joint Motion for Summary Judgment should be granted in its entirety, and the Court should enter judgment determining that:

1.  Defendants meet the definition of "Government of Iran" under Executive Order. 13599 ("E.O. 13599") and 31 C.F.R. 560;

2.  All of Defendants' assets are "blocked assets" under E.O. 13599;

3.  All Plaintiffs are entitled to turnover of all assets at issue in this matter pursuant to section 201 of the Terrorism Risk Insurance Act of 2002;

4.  The Heiser, Havlish, Acosta, Beer, and Kirschenbaum Judgment Creditor Plaintiffs are entitled to turnover of all of assets at issue in this matter pursuant to section 1610(g) of the Foreign Sovereign Immunities Act (the "FSIA");

5.  All Plaintiffs are entitled to turnover of the real estate and all appurtenances thereto located at 650 Fifth Avenue, New York, New York, all of 650 Fifth Avenue Company and Assa's bank accounts, and Alavi's and Assa's partnership interests in 650 Fifth Avenue Company pursuant to section 1610(a)(3) of the FSIA;

6.  All Plaintiffs are entitled to turnover of all of Assa's assets at issue in this matter pursuant to section 1610(b)(3) of the FSIA.

---

litigation of the . . . issue [had] reached a stage where there [was] 'no really good reason for permitting it to be litigated again'").

Dated:   New York, New York
   September 17, 2013

STROOCK & STROOCK & LAVAN LLP

By:   /s/  Curtis C. Mechling
   Curtis C. Mechling
   James L. Bernard
   Benjamin Weathers-Lowin
   Monica Hanna
   Patrick N. Petrocelli
   Nathan H. Stopper
   180 Maiden Lane
   New York, New York  10038
   Tel: (212) 806-5400

   *Attorneys for the Greenbaum, Acosta,*
   *Beer, and Kirschenbaum Plaintiffs*

SALON MARROW DYCKMAN NEWMAN
& BROUDY LLP

By:  /s/  Liviu Vogel
   Liviu Vogel
   Mark Antar
   292 Madison Avenue
   New York, New York  10017
   Tel: (212) 661-7100

*Attorneys for the Peterson Plaintiffs*

ZUCKERMAN SPAEDER LLP

By:   /s/  Aitan D. Goelman
   Aitan D. Goelman
   Peter Kolker (admitted *pro hac vice*)
   1800 M Street, NW
   Suite 1000
   Washington, DC 20036
   Tel: (202) 778-1800
   -and-
   Noah Solowiejczyk
   1185 Avenue of the Americas, 31st Fl.
   New York, NY 10036
   Tel: (212) 704-9600

*Attorneys for the Rubin Plaintiffs*

WIGGINS, CHILDS, QUINN & PANTAZIS, LLC

By:  /s/  Dennis G. Pantazis
Dennis G. Pantazis (admitted pro hac vice)
301 19th Street North
Birmingham, AL  35203
Tel: (205) 314-0531

-and-

Timothy B. Fleming (admitted *pro hac vice*)
WIGGINS CHILDS QUINN &
PANTAZIS, PLLC
1850 M Street, NW, Suite 720
Washington, D.C.  20036
Telephone: (202) 467-4489

*Attorneys for the Havlish Plaintiffs*


DLA PIPER LLP

By:  /s/  Richard M. Kremen
Richard M. Kremen (admitted *pro hac vice*)
Dale K. Cathell (admitted *pro hac vice*)
Jodie E. Buchman (admitted *pro hac vice*)
Lauren C. Genvert (admitted *pro hac vice*)
6225 Smith Ave.
Baltimore, MD 21209
Tel: (410) 580-3000
-and-
Cary B. Samowitz
Timothy Birnbaum
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
Telephone:  212-335-4500

*Attorneys for the Heiser Plaintiffs*